ANDREW DEISS (USB 7184)
DAVID FERGUSON (USB 16043)
DEISS LAW, P.C.
10 W 100 S Suite 700,
Salt Lake City, UT 84101
Tel: (801) 433-0226
deiss@deisslaw.com
dferguson@deisslaw.com
*Counsel for Plaintiff*

## THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

| | | |
|---|---|---|
| VIA GROUP PARTNERS, LLC. | : | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | : | |
| vs. | : | Case No. 2:2021cv00694 |
| CHRISTINE BARANOWSKI; FRANK CLARK; STEPHEN LEE; ENCORE LEADERSHIP, LLC | : | Judge Tena Campbell |
| | : | |
| | : | |
| Defendants. | : | |

Plaintiff Via Group LLC, ("Via Group"), by and through counsel,
complain of Defendants Christine Baranowski, Frank Clark, Stephen Lee,
and Encore Leadership, LLC ("Baranowski," "Clark," "Lee," "Encore"
collectively "Defendants") as follows:

## STATEMENT OF THE CASE

Via Group partners with companies in recruiting and hiring
executives. Via Group is financially retained by the client to conduct a

search to identify and recruit the right person/s. Clark and Baranowski were both members and employees of Via Group. Lee also worked for the company. Clark and Baranowski were in charge of a document called the Pipeline, which had a list of all clients and potential clients that Via Group was courting and who were willing to financially retain a company, such as Via Group, for executing a search for qualified people.

Clark was ultimately terminated from Via Group for cause in August of 2021. He then started a competitive LLC, Encore. Baranowski quit Via Group and joined Encore as a member. Lee followed shortly thereafter. Since Clark left, Via Group has lost one of its largest accounts, American Express, who told Via Group that they would move their business to the "recruiter" with whom they worked, and, in this case it was Clark and Baranowski. Clark, with his relationship with other Via Group clients, along with other Via Group prospective clients, has diverted money that should go to Via Group, but instead has gone to Encore. The evidence, as discussed below, points to Clark, Baranowski, and Lee taking Via Group's client list (i.e., the Pipeline) to competitively profit from Via Group. In so doing, Clark, Baranowski, and Lee have breached their contracts, breached fiduciary duties, and have misappropriated Via Group's Pipeline.

## PARTIES

1.  Via Group has a Utah dba, based in Salt Lake County, Utah.

2.  Clark resides in Cook County, Illinois.

3.  Lee resides in Denton County, Texas.

4.  Baranowski resides in Clackamas County, Oregon.

5.  Encore has an Illinois dba, based in Cook County, Illinois.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this matter. Defendants have removed
    this case to federal court based on diversity jurisdiction. Plaintiffs do not
    intend to challenge the removal.

7.  Moreover, this Court has jurisdiction because Baranowski's
    Confidentiality and Non-Disclosure Agreement provides that any
    litigation resulting from a breach of that agreement take place in Utah.
    Exhibit A.

## GENERAL ALLEGATIONS

8.  Via Group partners with companies in areas of executive search, DEI
    consulting, digital transformation, among other services.

9.  Via Group is financially retained by such companies to fulfill on these
    services.

10. Largely, Via Group locates clients through longstanding industry relationships and its reputation.

11. In addition, Via Group enters into contracts with Partners, who are paid a commission in exchange for (1) any account that they originate and bring to the company, and (2) fulfilling on an account with a candidate or other service.

    a. The term Partner is an internal designation of someone whose tasks involve the development and fulfilling of an account. Partners of Via Group do not carry the same rights and responsibilities as a Member does. *See* Utah Code § 48-3a-102(12) (defining "Member").

12. Via Group's also maintains an Advisory Board, members of which are paid in commissions, as with Partners, for (1) accounts the board member originates and brings to the company, and (2) fulfilling an account with a candidate.

    a. The term Advisory Board is an internal designation for individuals who have a unique role in referring, developing, and fulfilling accounts.

13. Partners are not compensated for any account that an Advisory Board member brings to the company.

14. Individuals on the Advisory Board are not salaried.

15. Individuals who are Partners are not salaried.

16. Via Group also has members who are Founding Partners and who are now, but were not originally, paid salary.

    a. Founding Partners are Members as contemplated under Utah Code § 48-3a-102(12) (defining "Member").

17. Founding Partners are expected to bring in accounts, develop them, and fulfill those accounts with a candidate.

18. However, unlike the Partners and the Advisory Board, Via Group's Founding Partners are not paid in commission.

19. Barry Raymond ("B. Raymond") was the first Founding Partner, followed by Erik Raymond ("E. Raymond").

20. Clark was subsequently added as a third Founding Partner.

21. When Via Group was still in its infancy, the Founding Partners could not be paid in salary because the company could not yet afford it.

22. Accordingly, the Founding Partners were compensated, in part, with shares of the company.

23. Additionally, all three Founding Partners took a distribution as the company built on its early successes.

24. Early on, Via Group's plan was to develop enough business that it would get to the point where the Founding Partners could be paid salary.

25. The company had not yet reached the point of being able to salary its Founding Partners by the time that Clark was terminated, *see infra*.

26. The Founding Partners were expected to devote their time, energy, and available resources to get Via Group to a position where a salary was available.

**Frank Clark**

27. Frank Clark worked for Via Group from September 2020 until August 2021, starting on or about September 12, 2020.

28. Clark's hiring process began on or about July 17, 2020.

29. Although B. Raymond and E. Raymond, started Via Group together, Clark was brought on shortly after the creation of Via Group.

30. While in the process of being hired (between July 17 and September 12, 2020), Clark told Via Group that Via Group that he was a millionaire.

31. While in the process of being hired (between July 17 and September 12, 2020) Clark represented to Via Group that within his extensive corporate experience, he had 25 years of experience in Diversity, Equity, and Inclusion ("DE&I") consulting.

32. Clarks purported DE&I experience made him a highly attractive hire.

33. The purported fact that Clark was a millionaire caused Via Group to believe that he was highly successful and a valuable asset.

34. Via Group was so excited about Clark's financial success that the topic was discussed at their Founder's Meeting.

35. In fact, Via Group was induced to hire Clark on account of his experience and purported success.

36. Furthermore, Via Group was induced to make Clark a Founding Partner.

37. Clark made these representations in order to be hired.

38. As a Founding Partner, Clark was not entitled to commissions for accounts he brought in or deals he closed.

39. Any commission that Clark would have been entitled to was replaced by the distribution that he received as a Founding Partner.

40. When Clark joined Via Group, the company's shares were distributed equally between Clark and the Raymonds.

41. Clark was responsible for bringing in accounts, developing them, and closing those accounts successfully.

42. Clark, along with Baranowski, was responsible for maintaining a company document called the Pipeline. (discussed below).

43. Via Group had no reason to disbelieve Clark's representations of his DE&I experience when it hired him.

44. Clark's representations were false.

45. Contrary to his representation, Clark did not have 25 years in DE&I consulting.

46. Contrary to his representation, Clark was not a millionaire.

47. Via Group, however, knew none of this at the time that it made him a Founding Partner.

48. Via Group would not have hired Clark and made him a Founding Partner had it not believed in his misrepresentations.

49. Clark was terminated on or about August 5, 2021.

50. Clark was terminated for several reasons, including misrepresentations made to Via Group's Advisory Board.

51. It became apparent that Clark lacked 25 years of experience in DE&I gradually through conversations with Barry Raymond overtime (between his date of hiring and termination date).

52. Clark's lack of DE&I experience became clear in mid-2021.

    a. Clark received a lead from one of Via Group's advisors on contacting a professor at UNC to try to make her into a highly valuable candidate.

b. Clark was given the task specifically because of his purported DE&I consulting experience which, if true, would have been an asset in making the connection.

c. Clark never followed through with the lead to make contact.

d. Clark similarly failed to follow through with another lead (again given by one of Via Group's advisors) on a DE&I consulting opportunity at Rush University.

e. Barry Raymond confronted Clark shortly before Clark's termination about Clark's failure to follow through with leads.

f. Clark admitted to Barry Raymond that Clark lacked the level of competence to make these deals happen.

g. This admission contradicted his claim to 25 years in DE&I consulting.

53. It became clear that Clark was not a millionaire, despite his claims as such, on or about October 29, 2020.

a. Barry Raymond had attempted to put Clark on the company bank account at Mountain America Credit Union on or about October 29, 2020.

b. The Credit Union turned Clark down after running a credit check on him.

    c.  The Credit Union turned Clark down in part because Clark's credit status was in the 400s.

54. Between the time of his hiring and his termination, Clark has received over $70,000 in disbursements and other money owing to his relationship as Founding Partner and employee of Via Group.

55. Clark has since started Encore Leadership, LLC with Baranowski.

**Christine Baranowski**

56. Christine Baranowski worked for Via Group from August 2020 until September 2021.

57. Baranowski was a Via Group Partner.

58. Baranowski signed a Partnership Agreement on June 13, 2021. Exhibit B.

    a.  Baranowski's agreement details the way in which she would be compensated.

    b.  Baranowski's agreement contains a non-compete clause prohibiting competition for a period of six months after the agreement ends.

    c.  Baranowski's agreement contains a non-solicitation clause prohibiting the solicitation of any Via Group employee or client for a period of six months after the agreement ends.

59. Baranowski signed a Confidentiality and Non-Disclosure Agreement on February 26, 2021. Exhibit A.

    a. The agreement requires that Baranowski to "protect…all proprietary creative and intellectual property that belongs to" Via Group.

    b. The agreement allows Baranowski to use confidential information only for the purpose of creating and developing Via Group accounts.

    c. Baranowski's obligations under the agreement remain in effect for five years following the end of the agreement.

60. Clark hired Baranowski.

61. Clark is aware of her Partnership Agreement. Exhibit B. *See bottom of Page 5*.

62. Clark is aware of Baranowski's Confidentiality and Non-Disclosure agreement. Exhibit A.

63. Baranowski was also made a Member in the Operating Agreement.

64. Baranowski, along with Clark, was responsible for maintaining a company document called "the Pipeline." (discussed below).

65. Baranowski quit her position at Via Group in September 2021.

66. Baranowski has since started Encore Leadership, LLC with Clark.

67. On information and belief, Baranowski was solicited by Clark to develop Encore with him.

68. Baranowski is Encore's executive vice-president and CHRO.

**Stephen Lee**

69. Stephen Lee worked for Via Group from May 2021 until September 2021.

70. Lee was a Via Group Partner.

71. Lee signed a Partnership Agreement on April 19, 2021. Exhibit C.

    a. Lee's agreement details the way in which she would be compensated.

    b. Lee's agreement contains a non-compete clause prohibiting competition for a period of six months after the agreement ends.

    c. Lee's agreement contains a non-solicitation clause prohibiting the solicitation of any Via Group employee or client for a period of six months after the agreement ends.

72. Baranowski was responsible for hiring Lee.

73. Lee was supposed to have signed a Confidentiality and Non-Disclosure Agreement but did not sign one.

74. Baranowski was responsible for having Lee sign a confidentiality and non-disclosure agreement, but Baranowski did not ensure that Lee did so.

75. Lee remained an employee of Via Group after Clark and Baranowski left through a subsidiary of Via Group: Logos.

76. On information and belief, Lee remained at Via Group as a "mole" to gather client information for Clark and Baranowski.

77. Lee ultimately quit Via Group.

78. Lee works for Encore Leadership, LLC, along with Clark and Baranowski.

79. On information and belief, Lee was solicited to work at Encore by Frank and Baranowski.

**The Pipeline – Via Group's Trade Secret**

80. The Pipeline is a spreadsheet that keeps Via Group informed about the progress of accounts.

   a.  The Pipeline includes the names of all potential and existing accounts Via Group accounts.

   b.  It shows who is responsible for bringing in potential accounts.

   c.  It shows what those accounts are worth.

   d.  It shows who, if anyone, has fulfilled any existing account.

81. The accounts listed in The Pipeline are companies that are interested in fulfilling a job position and are willing to pay a fee for a company, like Via Group, to provide candidates for that position.

82. Via Group identifies its accounts through solicitating the companies and/or receiving referrals from the Advisory Board.

83. It is not generally known which companies are willing to pay a fee for candidates to be supplied.

84. Via Group's revenue is derived from fees it receives by successfully placing candidates with the companies on the client list.

85. Accordingly, the Pipeline is Via Group's intellectual property, constituting its trade secrets.

86. Clark and Baranowski were in charge of maintaining the Pipeline for Via Group while working there.

87. Clark retained an electronic copy of the Pipeline on his computer while at Via Group.

88. Baranowski retained an electronic copy of the Pipeline on his computer while at Via Group.

89. Clark retained his computer when he was terminated by Via Group.

90. Baranowski retained her computer when she quit Via Group.

91. Clark was required to delete his copy of the Pipeline upon termination of employment at Via Group.

92. Baranowski was required to delete his copy of the Pipeline upon quitting Via Group.

93. To the extent that Lee had access to the Pipeline, Lee was required to delete his copy of the Pipeline upon quitting Via Group.

94. On information and belief, Clark retained a copy of Via Group's Pipeline after being terminated.

95. On information and belief, Baranowski retained a copy of Via Group's Pipeline after leaving.

96. On information and belief, Lee retained a copy of Via Group's Pipeline after leaving.

**Taking Away Business**

   *American Express*

97. Among the accounts that Clark and Baranowski developed was an account with American Express.

98. Baranowski fulfilled on the American Express account while at Via Group.

99. Clark worked on developing the American Express account.

100.   After Clark and Baranowski left, Via Group lost its relationship with American Express.

101.   A representative of American Express explained to Barry and Erik Raymond that the American Express follows the recruiter, not the company (i.e., Via Group) that it retains.

102.   American Express ended its relationship with Via Group because Clark left Via Group.

103.   Via Group has no reason to believe that American Express ended its relationship with Via Group other than because of the company's relationship with its "recruiter," Clark, induced it to leave.

104.   On information and belief, Encore developed its own relationship with American Express.

105.   On information and belief, Encore's relationship with American Express is because of Clark's "recruiter" role with American Express.

106.   On information and belief, Encore now competes with Via Group by developing business with American Express that Via Group had previously developed.

107.   Baranowski is aware of Clark's relationship with American Express.

108.   Clark is aware of Baranowski's Partnership Agreement that she signed with Via Group.

109.   Baranowski is aware of Lee's Partnership Agreement that he signed with Via Group.

### Other Accounts

110.   On reviewing Clark's Via Group email account, including all past emails that Clark sent while at Via Group, Via Group has found no emails from Clark that show communication with any potential clients (other than American Express) that Clark self-assigned on the Pipeline.

111.   On information and belief, Clark was developing personal relationships with potential clients while he was supposed to be developing those clients for Via Group.

112.   On information and belief, while at Via Group, Clark used a separate email account to contact potential clients.

113.   On information and belief, after Clark left, but before Baranowski left to join him, Baranowski and Clark were having professional meetings.

114.   On information and belief, Encore has reached out to work with Kristi Matus at Buckle, a company that has done business with Via Group.

115.   On information and belief, Encore has reached out to work with Two

Chairs, a company that Via Group was working with to develop

business.

116.   On information and belief, Encore has reached out to work with

Great Minds, a company that Via Group was working with to develop

business.

117.   Encore was incorporated in September 2021, shortly after

Baranowski quit her position at Via Group.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT – Baranowski

118.   Via Group realleges and incorporates herein by reference each of the

preceding paragraphs as if set forth herein.

119.   Plaintiffs had a contract with Baranowski through her Partnership

Agreement. Exhibit B.

120.   The contract included a non-compete clause:

> During the term of this Agreement and for a period of six (6)
> months thereafter, the Partner shall not engage in any activity
> that constitutes a conflict of interest with the Company, including
> any competitive employment, business, or other activity
> involving the disclosure of Confidential Information. Any
> waivers must be received, in writing from the Company.

Exhibit B, 11.

121.    The contract describes Confidential Information as, *inter alia*, trade

secrets. Exhibit B, 10.1.

122.    The contract included a non-solicitation clause:

> During the term of this Agreement and for a period of six (6)
> months after the termination of this Agreement for whatever
> reason, Partner agrees not to attempt to divert or interfere with
> the development of the Company's business by soliciting, hiring
> or contracting with any employee or client of the Company.

Exhibit B, 12.

123.    Baranowski quit her job at Via Group in September 2021.

124.    She became a member of Encore that same month.

125.    Baranowski breached her Partnership Agreement when she joined

Encore to work in a competitive business.

   a.   Encore directly competes with Via Group, angling to do the same

   kind of business with the same customers that Via Group markets

   to.

   b.   On information and belief, Encore has developed a relationship

   (doing the same kind of business) with American Express, a

   company and client that both Clark and Baranowski developed

   for and fulfilled at Via Group.

c.  On information and belief, Encore has developed a relationship (doing the same kind of business) with Buckle, a company and client that Baranowski developed for Via Group.

d.  On information and belief, Encore has developed a relationship (doing the same kind of business) with Two Chairs, a company and client that Baranowski developed for Via Group.

e.  On information and belief, Encore has developed a relationship (doing the same kind of business) with Great Minds, a company and client that Clark developed for Via Group.

126.  On information and belief, Baranowski developed the idea of going into business with Clark while Baranowski was still at Via Group.

127.  On information and belief, Baranowski would have been aware of Clark's relationships with Via Group clients American Express and Great Minds when she decided to go into business with Clark, using Clark's relationships with those clients to solicit them into doing business with Encore.

128.  Baranowski breached her Partnership Agreement when she solicited Lee to work at Encore.

a.  Baranowski is Encore's Chief Human Resources Officer.

b.  Lee quit Via Group shortly after Baranowski left Via Group.

    c.  Lee joined Encore shortly after quitting Via Group.

129.   Plaintiffs did all or substantially all that the Partnership Agreement required of them by not breaching their obligations of the agreement.

130.   Baranowski's contractual obligations with Via Group are also encompassed by her Confidentiality and Non-Disclosure Agreement. Exhibit A.

    a.  This agreement prohibits the use of Via Group's confidential information for purposes other than advancing Via Group's financial interests.

    b.  Th obligations of the agreement continue on for five years following the receipt of the confidential information, regardless of whether the agreement is terminated.

131.   Baranowski breached the Confidentiality and Non-Disclosure Agreement when she "exploited, misused, misappropriated, or disseminated" Via Group's active and prospective clients to Encore.

132.   Via Group has suffered damages as a result of Baranowski's breach.

    a.  Because Baranowski breached her contract by establishing Encore as a competitor business (with Clark), American Express was induced to leave Via Group, resulting in missed

opportunities and expectation damages in an amount to be proven at trial.

b. Because Baranowski breached her contract by establishing Encore as a competitor business (with Clark), Buckle was induced to use Encore for its services, resulting in missed opportunities and expectation damages in an amount to be proven at trial.

c. Because Baranowski breached her contract by establishing Encore as a competitor business (with Clark), Two Chairs was induced to use Encore for its services, resulting in missed opportunities and expectation damages in an amount to be proven at trial.

d. Because Baranowski breached her contract by establishing Encore as a competitor business (with Clark), Great Minds was induced to use Encore for its services, resulting in missed opportunities and expectation damages in an amount to be proven at trial.

e. All other potential clients that either Clark or Baranowski were courting while at Via Group are now influenced to go with

Encore, resulting in missed opportunities and expectation

damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT – Lee

133.   Via Group realleges and incorporates herein by reference each of the

preceding paragraphs as if set forth herein.

134.   Via Group had a contract with Lee through his Partnership

agreement. Exhibit C.

135.   The contract included a non-compete clause:

> During the term of this Agreement and for a period of six (6) months thereafter, the Partner shall not engage in any activity that constitutes a conflict of interest with Via, including any competitive employment, business, or other activity involving the disclosure of Confidential Information. Any waivers must be received, in writing from the Company.

Exhibit C, 5.

136.   The contract included a non-solicitation clause:

> During the term of this Agreement and for a period of six (6) months after the termination of this Agreement for whatever reason, Partner agrees not to attempt to divert or interfere with the development of the Company's business by soliciting, hiring or contracting with any employee or client of the Company.

Exhibit C, 6.

137.   Lee quit his job at Via Group in September 2021.

138.   He became an employee of Encore in either September or early
October 2021.

139.   Lee breached his Partnership Agreement when he joined Encore.

   a.   Encore directly competes with Via Group, angling to do the same
   kind of business with the same customers that Via Group markets
   to.

   b.   On information and belief, Encore has developed a relationship
   (doing the same kind of business) with American Express, a
   company and client that both Clark and Baranowski developed
   for and fulfilled at Via Group.

   c.   Because Baranowski breached her contract by establishing
   Encore as a competitor business (with Clark), Buckle was
   induced to use Encore for its services, resulting in missed
   opportunities and expectation damages in an amount to be proven
   at trial.

   d.   Because Baranowski breached her contract by establishing
   Encore as a competitor business (with Clark), Two Chairs was
   induced to use Encore for its services, resulting in missed
   opportunities and expectation damages in an amount to be proven
   at trial.

e.   Because Baranowski breached her contract by establishing

Encore as a competitor business (with Clark), Great Minds was

induced to use Encore for its services, resulting in missed

opportunities and expectation damages in an amount to be proven

at trial.

140.   On information and belief, Lee was aware of Clark's relationships

with Via Group clients American Express, Buckle, Two Chairs, and

Great Minds when he decided to go into business with Encore,

benefiting from Clark's relationships with those clients to further

Encore's competitive business.

141.   Lee breached his Partnership Agreement when he joined a company

that solicits former Via Group clients and potential clients.

142.   Plaintiffs did all or substantially all that the Partnership Agreement

required of them by not breaching their obligations of the agreement.

143.   Via Group has suffered damages as a direct and proximate result of

Lee's breach.

a.   As an employee of Encore, Lee has devoted his time, attention,

and talents to furthering Encore's competitive business against

Via Group, resulting in missed opportunities for Via Group and

expectation damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT –
### Clark

144.   Via Group realleges and incorporates herein by reference each of the preceding paragraphs as if set forth herein.

145.   Clark was a named Member in the Operating Agreement, creating a contract with Via Group. EXHIBIT D

146.   Among Clark's responsibilities was to work to further the economic interests of Via Group.

147.   As an implied condition of his contract, Clark was prohibited from subverting Via Group's interests by taking any steps that would divert fees that should have gone to Via Group to himself.

148.   Clark's obligations included getting the company to a point of financial viability where he and the other Founding Members could take salary.

149.   On information and belief, Clark used an email account other than his Via Group email account to communicate with potential clients.

150.   On information and belief, Clark developed relationships with clients and potential clients that would allow him to take opportunities with him in the event that he left Via Group.

151.   Upon his termination from Via Group, Clark established a competitor business: Encore.

152.    On information and belief, Clark leveraged his personal relationships with clients and potential clients to transfer Via Group business to Encore.

153.    Clark's conduct in communicating privately with potential clients and then taking those clients to his subsequently formed competitor business demonstrates that Clark did not act in good faith or fairly to Via Group.

154.    Via Group has suffered damages as a direct and proximate result of Clark's breach with respect to lost opportunities and business.

### FOURTH CAUSE OF ACTION – BREACH OF COMMON LAW FIDUCIARY DUTY OF LOYALTY – Baranowski

155.    Via Group realleges and incorporates herein by reference each of the preceding paragraphs as if set forth herein.

156.    The fiduciary duty of loyalty includes the duty to not compete. *See Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶ 20 (citing the Second Restatement of Agency). An agent of a company may not, while working at the company, use confidential information to make arrangements to compete. Restatement (Second) of Agency § 393 (1958).

157.   Baranowski had fiduciary duties created by her Partnership
Agreement, which requires the Partner to "work with other Partners and
with members of any boards . . . to . . . promote, grow, and scale the
Company in its objective to maintain products and/or services that meet
or exceed business and industry standards. The Partner shall also advise
in strategy, growth, giving, decision-servicing existing clients." Exhibit
B.

158.   Baranowski was Via Group's Chief Human Resources Officer,
which created fiduciary duties.

159.   Baranowski also signed a Confidentiality and Non-Disclosure
Agreement that establishes fiduciary duties regarding Via Group's trade
secrets and confidential information. Exhibit A.

160.   Baranowski was also a listed member of the Operating Agreement.
EXHIBIT D.

161.   Baranowski breached her fiduciary duties by soliciting Clark to go
into a directly competitive business to Via Group.

162.   Baranowski breached her fiduciary duties by soliciting Lee to go
into a directly competitive business to Via Group.

163.   Baranowski's Confidentiality and Non-Disclosure Agreement
required her to keep safe all of Via Group's intellectual property,

including its client list (kept through the Pipeline and the calendar).
Exhibit A.

164.    On information and belief, Baranowski breached her Confidentiality
and Non-Disclosure Agreement by going into a directly competitive
business to Via Group that uses clients that Via Group either retained or
were courting.

165.    Baranowski also breached her fiduciary duties by aiding and abetting
Clark's breach of contract by developing a plan to enter a competitive
business with him.

166.    Via Group has been actually and proximately harmed as a result of
this breach as their client list has been used against them for their
interest.

167.    Via Group suffered damages in an amount to be proven at trial as a
direct and proximate result of this breach. Plaintiff may also be entitled
to punitive damages.

### FIFTH CAUSE OF ACTION – BREACH OF STATUTORY FIDUCIARY DUTY OF CARE – Utah Code § 48-3a-409 Baranowski

168.    Via Group realleges and incorporates herein by reference each of the
preceding paragraphs as if set forth herein.

169.    Baranowski was a member of Via Group.

170.   As a member, Baranowski had a duty of care to the company.

171.   Part of the duty of care is to act reasonably to avoid actions that would harm the company.

172.   Baranowski had an obligation to inform Via Group if a competitor was set to take Via Group's clients and potential clients.

173.   On information and belief, Baranowski was aware that Clark had a plan to engage in a competitive business with Via Group while Baranowski was a member.

174.   On information and belief, Baranowski was aware that Clark would take American Express from Via Group based on his personal relationship with the company.

175.   Baranowski had a duty to report the emergence of an adverse company to Via Group that would use Via Group's clients and potential clients.

176.   Via Group suffered damages in an amount to be proven at trial as a direct and proximate result of this breach, including punitive damages.

## SIXTH CAUSE OF ACTION – BREACH OF COMMON LAW FIDUCIARY DUTY OF LOYALTY – Clark

177.   Via Group realleges and incorporates herein by reference each of the preceding paragraphs as if set forth herein.

178.   Clark had fiduciary duties by virtue of his role as a "founding partner" at Via Group. He was an equal member with B. Raymond and E. Raymond.

179.   While working at Via Group, Clark had access to Via Group's Pipeline.

180.   The account lists contained in the Pipeline constitute confidential information.

    a.   The account list contains a list of all companies that Via Group has contacted who are willing to pay a fee for a company, such as Via Group, to supply a candidate for a vacancy at the company.

    b.   This information is not generally known; Via Group actively solicits companies to learn this information and present its services.

181.   On information and belief, Clark was working to secure these clients for himself while he was still at Via Group.

182.   On information and belief, Clark used a separate email address, not his Via Group email, to communicate with potential clients.

183.   On information and belief, Clark developed personal relationships with these potential clients that distinguished himself from Via Group.

184.   On information and belief, Clark, upon his termination, established relationships with Via Group potential clients as an agent of Encore.

185.   Furthermore, Clark breached his fiduciary duty of loyalty by aiding and abetting Baranowski' breach of contract by working with her to develop a competitor business, Encore.

186.   Clark breached his fiduciary duty of loyalty by aiding and abetting Baranowski's breach of the fiduciary duties created by her Confidentiality and Non-Disclosure Agreement by going into business with her in a manner that created the breach.

187.   Via Group suffered damages in an amount to be proven at trial as a direct and proximate result of this breach, including punitive damages.

## SEVENTH CAUSE OF ACTION – BREACH OF COMMON LAW FIDUCIARY DUTY OF LOYALTY – Lee

188.   Via Group realleges and incorporates herein by reference each of the preceding paragraphs as if set forth herein.

189.   Lee had a fiduciary of duty of loyalty as a result of his Partnership Agreement with Via Group.

190.   Lee violated the fiduciary duty of loyalty by aiding and abetting the breaches of Baranowski's non-solicitation agreement as described above by participating in her breach.

191.   Via Group suffered damages in an amount to be proven at trial as a direct and proximate result of this breach, including punitive damages.

## EIGHTH CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS – Utah Code §§ 13-24-1-9
### Clark, Baranowski, Lee, and Encore

192.   Via Group realleges and incorporates herein by reference each of the preceding paragraphs as if set forth herein.

193.   The account lists contained in the Pipeline constitute trade secrets.

    a.   The account list contains a list of all companies that Via Group has contacted who are willing to pay a fee for a company, such as Via Group, to supply a candidate for a vacancy at the company.

    b.   This information is not generally known; Via Group actively solicits companies to learn this information and present its services.

194.   On information and belief, Clark, Baranowski, and Lee extracted information from the Pipeline and have that information at Encore.

195.   On information and belief, Clark was working to secure these clients for themselves while they were still at Via Group. Accordingly, the misappropriation is both willful and malicious.

196.   Moreover, the misappropriation is both willful and malicious because Baranowski signed a Confidentiality and Non-Disclosure

Agreement that made such an act clearly a violation of her contract with Via Group.

197.   Via Group suffered damages, such as lost profits and unjust enrichment, in an amount to be proven at trial as a direct and proximate result of this breach. Because the misappropriate is both willful and malicious, Plaintiff is entitled to exemplary damages at twice the amount of economic damages.

## NINTH CAUSE OF ACTION – FRAUD
### Clark

198.   Clark began working for Via Group on or about September 12, 2020.

199.   Clark's hiring process began on or about July 17, 2020.

200.   In conjunction with his being hired (between July 17 and September 12, 2020), Clark represented to Via Group that within his extensive corporate experience, he had 25 years of experience in DE&I consulting.

201.   Further in conjunction with his being hired (between July 17 and September 12, 2020), Clark represented to Via Group that he was a millionaire.

202.   Clarks purported DE&I consulting experience made him a highly attractive hire.

203.   The purported fact that Clark was a millionaire caused Via Group to
believe that he was highly successful.

204.   Via Group was induced to hire Clark on account of his experience
and purported success.

205.   Furthermore, Via Group was induced to make Clark a Founding
Partner owing to his purported experience.

206.   As a Founding Partner, had vested shares in the company.

207.   As a Founding Partner, Clark received distributions.

208.   Clark received over $70,000 between his hiring and termination.

209.   Clark made those representations about being a millionaire and
having years of DE&I consulting experience in order to be hired by Via
Group.

210.   Via Group had no reason to disbelieve Clark's representations of his
DE&I experience when it hired him.

211.   Via Group had no reason to disbelieve Clark's representation that he
was a millionaire when it hired him.

212.   Clark's representations were false.

213.   Contrary to his representation, Clark did not have 25 years in DE&I
consulting.

214.   Shortly before being fired, Clark admitted to Barry Raymond that

Clark lacked the competence to develop candidates at UNC and Rush

University.

215.   Contrary to his representation, Clark was not a millionaire.

216.   In fact, Clark's credit score, was in the 400s on or about October 29,

2020.

217.   Via Group, however, knew none of this at the time that it made him

a Founding Partner.

218.   Clark benefited from his fraud by taking distributions and advances

from the company.

219.   Via Group would not have hired Clark and made him a Founding

Partner had it not believed in his misrepresentations.

220.   Via Group suffered damages in an amount to be proven at trial as a

direct and proximate result of this breach, including punitive damages.

## TENTH CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS
### Clark, Baranowski, Lee

221.   Via Group realleges and incorporates herein by reference each of the

preceding paragraphs as if set forth herein.

222.   Via Group had economic relationships and potential economic

relationships with entities listed on its Pipeline.

223.   These relationships included American Express.

224.   Baranowski interfered with Via Group's economic relationship with American Express by courting American Express at Encore.

225.   As has Clark.

226.   As has Lee.

227.   On information and belief, Baranowski has interfered with Via Group's economic relationships with potential clients on the Pipeline by establishing Encore as a direct competitor of Via Group and by soliciting potential clients on the pipeline.

228.   As has Clark.

229.   As has Lee.

230.   Baranowski did the above in violation of her duty to non-compete.

231.   Lee did the above in violation of her duty to non-compete.

232.   Clark did the above by aiding and abetting Baranowski's breach of fiduciary duties.

233.   Clark also did the above by violating an implied condition of his contract to not subvert Via Group's interests.

234.   As a result of the interference, Via Group has lost its relationship with American Express.

235.   Also as a result of the interference, Via Group now must work to compete against Encore for Via Group's potential clients.

236.   This conduct was intentional, wrongful, illegal, deceptive, and done

without Via Group's knowledge or consent.

237.   Via Group suffered damages in an amount to be proven at trial as a

direct and proximate result of this breach, including punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court for relief as follows:

1.   On the first cause of action:

    a.   For a determination by the Court that Baranowski breached

       her contract with Via Group.

    b.   For expectation damages in an amount to be determined by

       the Court but believed to be in excess of $300,000.

    c.   For interest on the amount described in subparagraph (b),

       calculated at the prevailing rate.

    d.   For reasonable attorney's fees, litigation costs, and other costs

       of the action.

2.   On the second cause of action:

    a.   For a determination by the Court that Lee breached his

       contract with Via Group.

    b.   For expectation damages in an amount to be determined by

       the Court but believed to be in excess of $300,000.

  c. For reasonable attorney's fees, litigation costs, and other costs

   of the action.

3. On the third cause of action:

  a. For a determination by the Court that Clark breached his

   contract with Via Group.

  b. For expectation damages in an amount to be determined by

   the Court but believed to be in excess of $300,000.

  c. For reasonable attorney's fees, litigation costs, punitive

   damages, and other costs of the action.

4. On the fourth cause of action:

  a. For a determination by the Court that Baranowski breached

   the duty of loyalty.

  b. For expectation damages, along with loss of reputation and

   business, in an amount to be determined by the Court but

   believed to be in excess of $300,000.

  c. For reasonable attorney's fees, litigation costs, punitive

   damages, and other costs of the action.

5. On the fifth cause of action:

  a. For a determination by the Court that Baranowski breached

   the duty of care.

    b.  For expectation damages, along with loss of reputation and business, in an amount to be determined by the Court but believed to be in excess of $300,000.

    c.  For reasonable attorney's fees, litigation costs, punitive damages, and other costs of the action.

6.  On the sixth cause of action:

    a.  For a determination by the Court that Clark breached the duty of loyalty.

    b.  For expectation damages, along with loss of reputation and business, in an amount to be determined by the Court but believed to be in excess of $300,000.

    c.  For reasonable attorney's fees, litigation costs, punitive damages, and other costs of the action.

7.  On the seventh cause of action:

    a.  For a determination by the Court that Lee breached the duty of loyalty.

    b.  For expectation damages, along with loss of reputation and business, in an amount to be determined by the Court but believed to be in excess of $300,000.

    c.   For reasonable attorney's fees, litigation costs, punitive damages, and other costs of the action.

8.   On the eighth cause of action:

    a.   For a determination by the Court that Baranowski, Clark, Lee, and Encore misappropriated Plaintiff's trade secrets.

    b.   For a determination that the misappropriation was willful and malicious.

    c.   For loss of profits and other damages in an amount to be determined by the Court but believed to be in excess of $300,000, including twice exemplary damages owing to the willful and malicious conduct.

    d.   For reasonable attorney's fees, litigation costs, and other costs of the action.

9.   On the ninth cause of action:

    a.   For a determination by the Court that Clark committed fraud against Via Group.

    b.   For damages in an amount to be determined by the court based on advances and distributions that Clark received as a result of his position at Via Group.

   c.   For reasonable attorney's fees, litigation costs, punitive

      damages, and other costs of the action.

10. On the tenth cause of action:

   a.   For a determination by the Court that Baranowski, Clark, and

      Lee have intentionally interfered with Via Group's economic

      relations and prospective relations.

   b.   For loss of profits and other damages in an amount to be

      determined by the Court but believed to be in excess of

      $300,000,

   c.   For reasonable attorney's fees, litigation costs, punitive

      damages, and other costs of the action.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury on all causes of action and claims so triable in this case.


DATED this 18th day of October, 2021.

DEISS LAW PC

/s/ *David Ferguson*
Andrew G Deiss
David Ferguson

*Counsel for Plaintiff*