Andrew G. Deiss (Utah Bar # 7184)
David Ferguson (Utah Bar # 16043)
DEISS LAW PC
10 West 100 South, Suite 700
Salt Lake City, UT 84101
(801) 433-0226
deiss@deisslaw.com
dferguson@deisslaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DISTRICT**

| | |
|---|---|
| VIA GROUP PARTNERS,<br><br>  Plaintiffs,<br><br>v.<br><br>BARANOWSKI et al.,<br><br>  Defendants. | **OPPOSITION TO MOTION TO DISMISS**<br><br>Case No. 21-cv-00694-TC<br><br>Judge Tena Campbell |

Plaintiff Via Group Partners, LLC, hereby opposes Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. *See* Dkt. No. 8.

**Introduction**

Utah has specific personal jurisdiction over the defendants for two primary reasons. First, the business relationship between the parties was in Utah. That is, the defendants worked for Plaintiff Via Group, which is a company with its principal place of business located in Salt Lake City, Utah. Second, this case is all about the harm direct

1

at that Utah-based company. When the Partners left Plaintiff, they solicited its customers—and in doing so, they interfered with Via Group's contractual relationships, and they violated fiduciary duties owed to Via Group.

Defendants ignore these facts in their motion. Instead, they focus on facts that relate to *general* personal jurisdiction. It's true that the defendants are not residents of Utah; indeed, Plaintiff concedes that Utah does not have general personal jurisdiction over them. But, again, a defendants worked for a Utah company, and the contacts arising from that relationship with Via Group created a sufficient nexus with Utah to establish *specific* personal jurisdiction. Defendants' contracts (including Utah choice of law clauses) confirm that, as do their communications with Via Group's owners, the Raymonds, who live in Utah.

Having established minimum contacts, defendants have the burden to establish that "traditional notions of fair play and justice" would be offended if this Court exercises personal jurisdiction. They cannot meet that burden. In short, plaintiff's and the forum state's interests outweigh any countervailing interest.

Arguing unfairness, the defendants argue that plaintiff should bring its claims through separate lawsuits in Oregon, Illinois, and Texas. That's an untenable request. At a minimum, it would lead to the risk of inconsistent rulings in foreign jurisdictions concerning Utah law. This state's interest in allowing Utah residents to prosecute Utah state claims against non-residents outweighs any burden on the defendants.

Utah maintains specific personal jurisdiction over the defendants, and the Court should deny the motion.

**Statement of Facts**

Because the Court must accept as true all of the factual allegations contained in the complaint, Via Group incorporates and adopts by reference the allegations in this action as if fully set forth herein. *See* First Amended Complaint, Dkt. No. 7.

**Argument**

"The Due Process Clause of the Fourteenth Amendment 'constrains a State's authority to bind a nonresident defendant to a judgment of its courts.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). A court may exercise personal jurisdiction over a non-resident defendant so long as the non-resident defendant has such minimum contacts with the forum state "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

It is the plaintiff's burden to establish that personal jurisdiction exists. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). Furthermore, all factual disputes must be resolved in favor of the plaintiff when determining whether a prima facie showing of jurisdiction has been made. *Id.* at 1057.

The test for specific jurisdiction is a two-step inquiry. *Old Republic Insurance Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). First, it must be

3

determined that the defendant has sufficient minimum contacts with the forum state. *Id.* A showing of minimum contacts requires that "(i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins.*, 877 F.3d at 904 (simplified).

Second, if minimum contacts exist, it is the defendant's burden to present a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Id.* (simplified) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77). This second prong is meant to ensure that the exercise of jurisdiction over a defendant is consistent with the traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 477. Tenth Circuit courts apply five factors in this inquiry:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Hood v. Am. Auto Care, LLC,* 21 F.4th 1216, 1227 (10th Cir. 2021) (quoting *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020)). "Instances where an otherwise valid exercise of personal jurisdiction would be constitutionally unfair are 'rare.'" *Id.*

The defendants have purposefully availed themselves to jurisdiction in this forum and no compelling reasons exist that would make the exercise of jurisdiction over them unreasonable.

4

**I.  This Court has specific personal jurisdiction over Defendants because (A) Defendants purposefully directed their activities at Utah residents, and (B) Via Group's injuries arise out of Defendants' activities directed at the forum.**

Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 472).

    **A.  The Amended Complaint establishes that Defendants have purposefully directed their activities at Utah residents.**

Defendants maintained intentional and continuous contacts with Utah from September 2020 until August 2021. *See* Dkt. No. 7, ¶¶ 27, 56, 69. During that time, Baranowski, Clark, and Lee each worked with Via Group under contract. *Id.* As agents of a Utah Limited Liability Company, they were necessarily involved in commerce in the State of Utah. All of Defendants' Via Group activities were made on behalf of a Utah business.

Courts in the Tenth Circuit, including this Court, have repeatedly concluded that specific jurisdiction exists when out of state employee (defendants) have maintained contact with their employer (plaintiff) that resides in the forum state. *See, e.g., Dyno Nobel, Inc. v. Johnson*, No. 2:20-CV-00840, 2021 WL 1647861, at *4 (D. Utah Apr. 27, 2021) (discussing *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990), and *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011)).

Similar to *Dyno Nobel*, *Marcus Food*, and *Equifax*, the individual defendants in this case formed a deliberate and continuous relationship with the forum state. They maintained interstate contracts with a Utah company in multiple ways, such as:

- **Clark** was an owner of Via Group under the Second Amended Operating Agreement. Dkt. No. 7, ¶¶ 20, 40. After he was hired, he entered into employment contracts on Via Group's behalf. Dkt. No 7, Ex. B. He contracted with customers on Via Group's behalf. Dkt. No. 7, ¶¶ 41, 97.

- **Baranowski** was a member of Via Group under the Second Amended Operating Agreement. Dkt. No. 7, ¶¶ 160, 169. After she joined Via Group, she entered into employment contracts on Via Group's behalf. Dkt. No 7, Ex. C. She also contracted with customers on Via Group's behalf. Dkt. No. 7, ¶¶ 97, 125.

- **Lee** entered into a partnership agreement with Via Group in which he received stock options and revenue sharing. Dkt. No. 7, Ex. C.

Pursuant to their contractual relationships with Via Group, they communicated continuously with the Raymonds, who they knew were Utah residents. Dkt. No. 7, ¶¶ 29–37, 63.

Although the contractual/ownership relationships satisfy the "minimum contacts" inquiry, there's more. The contents of the interstate contracts further illustrate purposeful availment to the forum. First, Baranowski's partnership agreement establishes her and Clark's connection to Utah. The choice of law is Utah. "In short, these [choice of law] clauses create a rebuttable presumption that the trial court has personal jurisdiction over the matter." *Jenkins v. Prime Ins. Co.*, No. 2:21-CV-00130-DAK, 2021 WL 3726620, at *9 (D. Utah Aug. 23, 2021) (simplified) (quotations

omitted). As indicated on the signature blocks, Clark and Baranowski understood that Utah law governed the relationship.

Second, Baranowski's contacts with Utah are also established through her confidentiality agreement. It chooses Utah for both law and venue. Moreover, the contract clearly states that Via Group's place of business is Salt Lake City, Utah.

Third, Defendant Lee's partnership agreement identifies Baranowski as "Managing Partner and Chief Human Resources Officer" of Via Group. Both Lee and Baranowski were transacting with and on behalf of a Utah company. Although not as clear as the other two agreements, the fact remains that the parties were doing business in Utah, regardless of their residence.

### B. The Amended Complaint establishes that Via Group's injuries arise out of the Defendants' contacts with Utah.

The next step is deciding whether the plaintiffs' injuries "arise out of" defendants contacts with the forum state. They do in this case.

The interstate contracts discussed above are the grounds for the breaches of contract claims alleged in causes of action one through three. Specifically, Baranowski's partnership agreement and nondisclosure agreement, Lee's partnership agreement, and the operating agreement. Via Group was damaged when defendants violated these contracts by, among other things, soliciting employees and customers that were working with Via Group.

Via Group's injuries related to their breach of fiduciary duty claims (four through seven) arise from defendants' legal relationships under Utah common law and

7

statute. For example, the defendants owed duties of loyalty to Via Group. When defendants started planning to leave and compete against Via Group, they were still working for Via Group. Defendants' competition was detrimental to Via Group, in Utah.

Similarly, as to claim eight, defendants misappropriated Via Group's trade secrets when they were working with Via Group. They gained access to those trade secrets through their contacts with Utah, having contracted with a Utah company.

Via Group's fraud and tortious interference claim relate to intentional misrepresentations to Utah residents—the Raymonds.

## II. Defendants cannot meet their burden to establish that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice.

When a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," courts will generally conclude that due process is satisfied. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Defendants have a challenging burden to overcome a threshold showing of minimum contacts. They must convince the court that bringing them to court in the forum state would offend traditional notions of fair play and substantial justice.

Taking each relevant factor in turn, most of them favor Via Group and none of them support dismissal.

*Burden on the Defendants.* Defendants contend that it would burdensome to litigate in Utah. They provide no specific information to support that position. Instead,

they rely on the same burden that exists for every defendant in a diversity jurisdiction case—they reside in another state. That is enough to remove to federal court, but it's not a meaningful burden for the purposes of fair play and substantial justice.

The burden on defendants is slight compared to any alternative where Via Group would be required to vindicate its rights in other forums that have no apparent connection with this lawsuit other than defendants' places of residence. Proceeding in this forum is the least burdensome option, and therefore this factor weighs against dismissal.

*Utah's interest in resolving the dispute.* Utah holds important interests in this dispute. The claims relate to harms suffered by a Utah organization, under Utah common law and statute. At least two contracts contain a Utah choice of law provision, and claims five and eight are brought under Utah Code §§ 48-3a-409 and 13-24-1–9, respectively. These claims are matters of Utah public policy, meant to be decided by a Utah finder of fact. Utah's interest in this case militates against dismissal.

*Via Group's interest in receiving convenient and effective relief.* Defendants seek to have Via Group file separate lawsuits in their home forums of Illinois, Texas, Oregon, and Delaware. That would be nonsensical and unduly burdensome on Via Group, who would be required to hire counsel in four different jurisdictions. The only way for Via Group to receive convenient and effective relief is through this proceeding in this venue. Again, this factor favors Via Group.

*The interstate judicial system's interest in efficient resolution.* Similarly, the court system's interest favors Via Group's position. Defendants appear to expect this

case to be refiled in multiple other jurisdictions. That would result in multiple court's presiding over these claims, which would lead to a risk of inconsistent rulings on issues of Utah law. Fracturing this case would cause unreasonable inefficiencies on Via Group and the court system.

*Utah's interest in furthering social policies.* The final factor is neutral.

None of the factors favors dismissal. Accordingly, "this is not a 'rare' case with special considerations that compel a determination against personal jurisdiction. This is rather standard fare: a resident of the forum State injured in that State by conduct emanating from another State brings suit in his home State." *Hood*, 21 F.4th at 1228.

For these reasons, specific jurisdiction is established against the defendants.

/s/ Andrew Deiss
Andrew Deiss
David Ferguson
Deiss Law, P.C.

3/21/2022

# EXHIBIT A

Andrew G. Deiss (Utah Bar # 7184)
David Ferguson (Utah Bar # 16043)
DEISS LAW PC
10 West 100 South, Suite 700
Salt Lake City, UT 84101
(801) 433-0226
deiss@deisslaw.com
dferguson@deisslaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| VIA GROUP PARTNERS,<br><br>  Plaintiffs,<br><br>v.<br><br>BARANOWSKI et al.,<br><br>  Defendants. | **DECLARATION OF ERIK RAYMOND**<br><br>Case No. 21-cv-00694-TC<br><br>Judge Tena Campbell |

*I, Erik Raymond, declare as follows:*

1. I am an individual residing in the State of Utah and over the age of eighteen.

2. I am competent to make a declaration in this matter.

3. I serve as a Founding Partner of Via Group Partners ("Via Group"), a Utah-based LLC.

4. Via Group was founded in Utah in 2019 has been operating in the state since that time.

5. Among other things, Via Group provides leadership advisory services, which include but aren't limited to retained executive search.

6. Via Group primarily identifies clients and job candidates through its longstanding industry reputation and relationships, established largely by myself and my cofounder, [Barry Raymond], from contacts made during our previous professional experience and as we built Via Group.

7. While Via Group is a Utah-based and registered company, the client base from which it draws is geographically unrestricted.

8. This is possible because the nature of Via Group's work is largely compatible with remote forms of execution, such as email notes and phone calls.

9. Consequently, many of our commissioned-based "Partners" also operate remotely.

    a. Partners at Via Group operate on a level similar to sales representatives in other companies.

10. In August 2020, I approved the hiring of Christine Baranowski as a Via Group Partner.

11. I was aware that her place of residence was outside of Utah

12. As a condition of Ms. Baranowski's employment with Via Group Partners, she was asked to sign a Confidentiality and Non-Disclosure Agreement specifying that any litigation arising from a breach in this agreement must take place in Utah.

13. In May 2021 Stephen Lee was hired as a Partner at Via Group Partners.

14. At the time of Mr. Lee's hiring, I was aware that his place of residence was outside of Utah.

15. As a condition of Mr. Lee's employment with Group Partner, he was asked to sign a Confidentiality and Non-Disclosure Agreement specifying that any litigation arising from a breach in this agreement must take place in Utah.

16. In September 2020, Frank Clark was brought into Via Group as a Founding Partner.

17. At that time, I was aware that his place of residence was not in Utah.

18. Mr. Clark's Confidentiality and Non-Disclosure Agreement specifies that any litigation arising from a breach in this agreement must take place in Utah.

19. Throughout their employment at Via Group, I maintained close contact with all remote Partners.

20. This included Ms. Baranowski.

21. I also maintained close contact with my fellow Founding Partner, Mr. Clark after the time he became a Founding Partner.

22. On average, either Barry or I spoke to remote workers such Mr. Clark and Ms. Baranowski 3-5 times a day via telephone and sent several communications on a typical daily basis via digital services such as email, Microsoft Teams, or text messaging.

23. I underwent this communication primarily from the company's office in Salt Lake City, Utah.

24. Barry Raymond also communicated with employees primarily through the same office.

25. The employees were aware that Utah was my place of residence and business operation, as well as that of Barry Raymond.

26. In 2021, Mr. Clark was terminated from Via Group misrepresenting information to Via Group's Advisory Board among other reasons.

27. Soon thereafter, Ms. Baranowski and Mr. Lee left Via Group as well.

28. Adverse to the contracts they had signed to work for Via Group, these former employees engaged in competitive behaviors by immediately starting a rival executive search business together called Encore.

29. They exploited multiple client relationships that had been initiated and cultivated during their time at Via Group. They also actively recruited sitting Board of Advisor members and successfully hired two of them (also a breach of contract).

30. Specifically, one of Via Group's most significant clients – American Express – ended their relationships with Via Group after the exit of Mr. Clark, Ms. Baranowski, and Mr. Lee.

31. American Express articulated their intention to resume services while terminating their relationship with Via Group.

32. It appears that American Express has moved to work with Mr. Clark, Ms. Baranowski, and Mr. Lee at their new competitive business, Encore.

33. In engaging with former clients of Via Group, Mr. Clark and Ms. Baranowski exploited trade secrets, intellectual property, and goodwill belonging to Via Group.

34. The loss of these contracts resulted in significant financial and reputational harm to Via Group.

*I, Erik Raymond, declare under penalty of perjury of the law of the State of Utah that the foregoing Declaration is true and correct to the best of my knowledge, information, and belief.*

DATED: March 21, 2022.

<u>/s/Erik Raymond</u>
Erik Raymond